UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION


JAMMY LEE MORTON,

        Plaintiff,

v.                                                   Case No. 2:04-cv-102
                                                       HON. GORDON J. QUIST

WAYNE DESHAMBO, et al.,

        Defendants.

_____/


**REPORT AND RECOMMENDATION**

Plaintiff Jammy Lee Morton, an inmate at the Alger Maximum Correctional Facility (LMF), filed this pro se civil rights action pursuant to 42 U.S.C. § 1983 against defendants Food Service Director Wayne DeShambo, Food Service Assistant Director Gerald Anderson, Food Service Leader Neil Thorson, Food Service Leader R. Pearson, Grievance Coordinator Wayne Trierweiler, Warden Barbara Bouchard and Chaplain Gerald Riley. The only remaining claims are plaintiff's First Amendment claims against defendants Riley, DeShambo, Anderson, Thorson and Pearson. Plaintiff alleges in his complaint that on October 18, 19 and 20 of 2003, he found his jelly covered in a greyish green mold. Plaintiff claims that this has happened on numerous other occasions and that Food Service staff, including defendants DeShambo, Anderson, Pearson and Thorson, are intentionally creating problems with Kosher trays in order to force Jewish prisoners off their Kosher diets. Plaintiff contends that the motivation for this behavior is that the Kosher meal program is expensive to run. On November 15 and 17 of 2003, defendants DeShambo, Anderson, Pearson, and Thorson served him meat products in violation of his strict vegan diet. Plaintiff states that this

violation had occurred on several occasions previously and that it was part of the plan to force plaintiff off his Kosher diet.

On November 23, 2003, Plaintiff filed a grievance on defendants DeShambo, Anderson, Pearson, and Thorson for contaminating his Kosher meal with non-Kosher food. This contamination allegedly occurs when unsealed Kosher food is placed in the same food service cart as unsealed non-Kosher food prior to delivery to the administrative segregation housing unit. Plaintiff complains that this leads to non-Kosher foods being spilled onto his food tray on an almost daily basis. Plaintiff claims that on November 24, 2003, defendants DeShambo, Anderson, Pearson, and Thorson refused to give him a vegetarian substitute on his Kosher meal in a further attempt to get Plaintiff to relinquish his Kosher diet. Plaintiff filed a grievance regarding this conduct, as well as on the conduct of defendants DeShambo, Anderson, Pearson, and Thorson in allowing Muslim prisoners to work in the Kosher kitchen. Plaintiff claims that these Muslim prisoners follow the antisemitic teachings of Louis Farakkan, which creates a major safety and security issue. Plaintiff further claims that defendants DeShambo, Anderson, Pearson, and Thorson do not follow the approved statewide Kosher menu, and that the Kosher meals lack variety and balance. In addition, plaintiff states that Defendants DeShambo, Anderson, Pearson, and Thorson intentionally serve non-Kosher items on his tray, and that they cut his salad dressing ration in half.

Plaintiff alleges that defendants DeShambo, Anderson, Pearson, and Thorson instructed him to kite Health Services and pretend that he has food allergies in order to get a medical detail for a strict vegan diet. Plaintiff refused, as telling a lie would violate the tenants of his religion. Finally, Plaintiff claims that defendant Riley improperly denied plaintiff a strict Kosher vegan detail. Plaintiff claims that defendants' conduct violates his rights under the First

Amendment, as well as under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1. Plaintiff seeks compensatory and punitive damages, as well as injunctive relief.

Defendants filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). While the evidence must be viewed in the light most favorable to the nonmoving party, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Plaintiff claims that defendants have denied him a strict vegan diet in violation of his religious beliefs. Plaintiff has received a Kosher diet since 2002, and a vegetarian diet since 2003. The prison does not have a strict vegan Kosher diet. Plaintiff concedes that a strict vegan Kosher diet is not mandated by the Jewish religion. However, plaintiff feels that it is proper under his personal Jewish beliefs to have a strict vegan Kosher diet. Prisoners do not lose their right to freely

exercise their religion by virtue of their incarceration. *Cruz v. Beto*, 405 U.S. 319, 322, n. 2 (1972). Freedom of religion being a fundamental right, any regulation which infringes upon it must generally be justified by a "compelling state interest". *See*, *for example*, *Wisconsin v. Yoder*, 406 U.S. 205 (1972). However, as a prisoner, plaintiff's constitutional rights are subject to severe restriction. *See*, *for example*, *Bell v. Wolfish*, 441 U.S. 520 (1979) (restriction on receipt of reading materials); *Hudson v. Palmer*, 468 U.S. 517 (1984) (privacy); *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974) (right to call witnesses); *Richardson v. Ramirez*, 418 U.S. 24 (1974) (vote). *See*, *generally*, *Washington v. Harper*, 494 U.S. 210 (1990); *Turner v. Safley*, 482 U.S. 78 (1987); *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987).

Rather, the standard by which prison regulations impinging on prisoner constitutional rights is judged is "reasonableness." *Turner*, 482 U.S. at 88-95; *Washington*, 494 U.S. at 223-25. In *Turner*, the Supreme Court expressly rejected any degree of "heightened scrutiny" in order to assure that "prison administrators . . ., and not the courts, . . . make the difficult judgments concerning institutional operations." *Id.* at 89, *quoting Jones v. North Carolina Prisoners' Union*, 433 U.S. 119 (1977).

In *Turner*, the court set forth four factors "relevant in determining the reasonableness of the regulation at issue." 482 U.S. at 89-91. First, there must be a "valid, rational connection" between the prison regulation and the legitimate governmental interest put forward to justify it. *Id.* at 89, *quoting Block v. Rutherford*, 468 U.S. 576, 586 (1984). Second, the reasonableness of a restriction takes into account whether there are "alternative means of exercising the right that remain open to the prison inmate." *Turner*, 482 U.S. at 90. Third, the court should consider the "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." *Turner*, 482 U.S. at 90. Finally, the existence or

absence of ready alternatives of accommodating the prisoner's rights is relevant to reasonableness. *Turner*, 482 U.S. at 90.  As stated by the court, this final factor "is not a 'least restrictive alternative' test."  *Id.* at 90.  "Prison officials need not show that "*no* reasonable method exists by which [prisoners'] rights can be accommodated without creating bona fide [prison] problems."  *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 350 (1987).

> In determining whether a prisoner's particular religious beliefs are entitled to free exercise protection, the relevant inquiry is not whether, as an objective matter, the belief is "accurate or logical." *Jolly v. Coughlin*, 76 F.3d 468, 476 (2d Cir.1996).  Instead, the inquiry is "whether the beliefs professed by a [claimant] are sincerely held and whether they are, in his own scheme of things, religious." *Patrick [v. LeFevre]*, 745 F.2d at 157 (quoting *United States v. Seeger*, 380 U.S. 163, 185, 85 S.Ct. 850, 13 L. Ed.2d 733 (1965)) (alteration in original) (emphasis added).  A claimant need not be a member of a particular organized religious denomination to show sincerity of belief.  *See Frazee v. Illinois Dep't of Employment Sec.*, 489 U.S. 829, 834, 109 S.Ct. 1514, 103 L. Ed.2d 914 (1989).

*Jackson v. Mann*, 196 F.3d 316, 320 (2d Cir. 1999).  However, mere personal beliefs that are not supported by a religious conviction are not entitled to constitutional protection.  *Weaver v. Jago*, 675 F.2d 116 (6th Cir. 1982)."(I)f the belief asserted is 'philosophical and personal rather than religious,' or is 'merely a matter of person al preference,' and not 'one of deep religious conviction, shared by an organized group,' it will not be entitled to First Amendment protection."  *Id.* at 118.  Plaintiff is already receiving a Kosher vegetarian diet which, as he concedes complies with his Jewish religious beliefs.  Plaintiff's request for a strict vegan Kosher diet is not required by his religion and therefore, is not mandated by the constitution.  Accordingly, defendants are entitled to summary judgment on this issue.

Plaintiff has asserted that defendants have contaminated or interfered with his meal tray on multiple occasions.  Plaintiff has received moldy jelly, he complains that he has had non-

Kosher foods on his meal tray, his Kosher tray is improperly placed in the hot oven meal cart with non-Kosher trays, that the Kosher trays are handled by untrained and unsupervised staff, and that sometimes he has received only half of his salad dressing. Plaintiff argues that this was done in "unjustified interference with the dietary Kosher laws" in violation of his First Amendment and Eighth Amendment rights. Plaintiff also argues that it is improper for the kitchen to employ Muslim prisoners to prepare Kosher food trays.

To the extent that plaintiff is alleging that this Eighth Amendment rights have been violated, those claims clearly fail. An Eighth Amendment claim is stated where a prisoner is denied some element of civilized human existence due to deliberate indifference or wantonness. *Wilson v. Seiter*, 501 U.S. 294 (1991); *see also Hudson v. McMillian*, 503 U.S. 1 (1992). In sum, this prong of the Eighth Amendment affords protection against conditions of confinement which constitute health threats, but not against those which cause mere discomfort or inconvenience. *Hudson*, 503 U.S. at 9-10 (requiring "extreme" or "grave" deprivation); *Wilson v. Lynaugh*, 878 F.2d 846, 849 (5th Cir. 1989), *cert. denied*, 493 U.S. 969 (1989); *Harris v. Fleming*, 839 F.2d 1232, 1235-36 (7th Cir. 1988). Plaintiff has not alleged a deprivation which triggers this form of Eighth Amendment scrutiny. Plaintiff's claims of mishandling of Kosher food trays fail to implicate one of the basic necessities of life.

Further, defendants concede that sometimes mistakes are made with food service. For instance, moldy jelly was delivered to prisoners. However, the jelly was packaged and it was not until the packages were opened by prisoners that it was discovered that the jelly was moldy. Defendants claim that this was the fault of the supplier and the supplier was notified of the problem. Further, in one instance, plaintiff's margarine was placed in the wrong bag by mistake. On another occasion, plaintiff received fish, which was replaced by beans and noodles when brought to the

attention of staff. Defendant Wayne DeShambo, the prison Food Service Director, has presented an affidavit which explains the procedures employed by the prison. Defendant DeShambo states that although not required, Kosher meals are placed in their own compartment on the food cart. Defendant DeShambo states that all prisoners who work in the Kosher Room are trained in Kosher food handling procedures.

It is clear that plaintiff is receiving Kosher meals at the prison. Although plaintiff has complaints about the procedures employed by the food service staff, in the opinion of the undersigned, plaintiff's religious beliefs are being accommodated by the prison. Defendants have conceded that mistakes are sometimes made in food service preparation, but those mistakes appear to be isolated and plaintiff has certainly not established that the few mistakes that he complains about were the result of intentional acts of the defendants. Plaintiff has failed to show that his constitutional rights were violated by defendants.

Defendants argue that they are entitled to qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

"The procedure for evaluating claims of qualified immunity is tripartite: First, we determine whether a constitutional violation occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known;

finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999).

When determining whether a right is clearly established, this court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits. *Dietrich*, 167 F.3d at 1012. An official action is not necessarily protected by qualified immunity merely because the very action in question has not previously been held to be unlawful. Rather, in light of pre-existing law, the unlawfulness of the official's conduct must be apparent. *Dietrich*, 167 F.3d at 1012; *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff. Part of the analysis is to determine whether there are any genuinely disputed questions of material fact. *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998). Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge. "This would be true notwithstanding that the trial judge found the [defendant] officer to be more credible than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id.*

The operation of the qualified immunity standard depends substantially upon the level of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified

>immunity unless the very action in question has previously been held unlawful, but it is to say that in light of the preexisting law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 639-40. *See also Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *cert. denied*, 520 U.S. 1157 (1997).

>The Sixth Circuit has observed:
>
>A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Thus, qualified immunity is not triggered only where the very action in question was previously held unlawful. *Anderson*, 483 U.S. at 639-40. Rather, the test is whether the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violated plaintiff's federal rights. *Id.* Plaintiff has failed to show that any of the defendants violated his constitutional rights.

Plaintiff has filed a motion for leave to amend his complaint. Leave to amend a complaint "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). However, "a party must act with due diligence if it intends to take advantage of the Rule's liberality." *United States v. Midwest Suspension and Brake*, 49 F.3d 1197, 1202 (6th Cir. 1995). The court may deny leave to amend a complaint where the amendment is brought in bad faith, will result in undue delay or prejudice to the opposing party, or is futile. *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995), *cert. denied*, 116 S. Ct. 1354 (1996). Plaintiff's proposed amended complaint more concisely sets forth his claims. Therefore, leave to amend the complaint should be granted.

Accordingly, it is recommended that plaintiff's motion for leave to amend his complaint (docket # 39) be granted. It is further recommended that defendants' motion for summary judgment (docket # 30) be granted, dismissing this complaint in its entirety.

Further, if the court adopts this recommendation the court should decide that an appeal of this action would not be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  For the same reasons that the court grants defendants' motion for summary judgment, the court can discern no good-faith basis for an appeal.  It is recommended that should the plaintiff appeal this decision, the court assess the $255 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g).  If he is barred, he should be required to pay the $255 appellate filing fee in one lump sum.

**NOTICE TO PARTIES**: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten days of your receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR. 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal of those issues or claims addressed or resolved as a result of the Report and Recommendation.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

    /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   May 3, 2005